IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ALVIN SHOWERS, III                                                    PLAINTIFF

v.                                            CIVIL ACTION NO. 1:19-cv-323-TBM-RPM

CITY OF BAY ST. LOUIS *et al.*                                        DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

The *pro se* Plaintiff, Alvin Showers, III, filed suit in this Court on June 14, 2019, alleging constitutional violations under 42 U.S.C. § 1983 and various state law claims against the City of Bay St. Louis, Mississippi; Mayor Michael Favre, former Mayor Les Fillingame, Chief of Police Gary Ponthieux, Former Chief of Police Michael DeNardo, Jeffrey Hendrix, Paul Taylor, Push Phillips, James Burch ("Municipal Defendants")[1]; and Sheriff Ricky Adam.[2] Now before the Court is Sheriff Adam's Renewed Motion for Judgment on the Pleadings [88] based on qualified immunity and the City of Bay St. Louis' and the Municipal Defendants' Motion for Judgment on the Pleadings [85].

Sheriff Adam argues in his Motion [88] that Showers' *Schultea* Reply [56] does not allege facts with sufficient particularity to overcome qualified immunity. Sheriff Adam requests Showers' Section 1983 claims against him in his individual capacity be dismissed for failure to meet the pleading standard.

The City of Bay St. Louis' and the Municipal Defendants' Motion [85] maintains that Showers' failure to articulate what each Defendant allegedly did to cause Showers harm

---

[1] Defendants Michael DeNardo and Jeffrey Hendrix have been dismissed pursuant to Orders [45] and [109].
[2] While Showers refers to the Sheriff as "Sheriff Ricky Adams" the Court notes that his name is "Sheriff Ricky Adam" and will refer to him as such throughout this Memorandum Opinion and Order.

necessitates dismissal of all claims against them. The City of Bay St. Louis and the Municipal Defendants contend that Showers offered only conclusory allegations and unsubstantiated assertions that are insufficient to defeat a motion for judgment on the pleadings.

Having considered the pleadings, the submissions of the parties, Showers' *Schultea* Reply [56], and relevant law, the Court concludes that Sheriff Adam is entitled to qualified immunity from Showers' individual capacity claims, and the City of Bay St. Louis and the Municipal Defendants are entitled to judgment on the pleadings on all federal and state law claims asserted against them. For the reasons set forth below, Sheriff Adam's Renewed Motion for Judgment on the Pleadings [88] is granted, and the City of Bay St. Louis' and the Municipal Defendants' Motion for Judgment on the Pleadings [85] is granted.

## I. BACKGROUND AND PROCEDURAL HISTORY

Showers filed this action on June 14, 2019, alleging constitutional violations under 42 U.S.C. § 1983 pertaining to his First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment rights. Showers also asserts a Section 1983 municipal liability claim for failure to train against the City of Bay St. Louis and the Municipal Defendants in their official capacities. *See* [1]. In addition to his federal claims, Showers also asserts a host of other state law claims including, civil conspiracy, failure to train, and defamation. [1] at pp. 4, 5, 13, 16, 29.

Sheriff Adam filed his first Motion for Judgment on the Pleadings [47] based on qualified immunity on August 4, 2020, which the City of Bay St. Louis and the Municipal Defendants joined on August 19, 2020. *See* [52]. In resolving the Defendants' first Motion for Judgment on the Pleadings [47] related to qualified immunity, United States District Judge Keith Starrett ordered Showers to respond to Defendants' qualified immunity defense by means of a reply

pursuant to *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). *See* [55] at pg. 5. In his *Schultea* reply, Showers was to "provide specific facts about the circumstances of the incident involving the alleged constitutional violations and the conduct of Sheriff Adam, as well as that of all other named Defendants, that supports each constitutional violation asserted against them." *Id.* Judge Starrett ordered Showers to submit "allegations of fact focusing specifically on the conduct of [each] individual who caused the plaintiff's injury." *Id.* Finally, Judge Starrett required Showers' *Schultea* Reply "be tailored to the defense of qualified immunity" and "support his claims of constitutional violations with sufficient precision and factual specificity to raise a genuine issue as to the illegality of the defendant's conduct at the time of the alleged acts." *Id.*

Showers timely filed his *Schultea* Reply [56] on October 8, 2020, asserting First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment constitutional violations against Sheriff Adam and the Municipal Defendants, in their individual capacities, as well as state law claims for conspiracy, failure to train, and defamation.

Sheriff Adam, the City of Bay St. Louis and the Municipal Defendants filed replies [59] [60] on October 20, 2020. On December 18, 2020, this matter was reassigned from Judge Starrett to the undersigned. Showers then submitted a Sur-Reply [63] on January 11, 2021, without leave of Court. On May 11, 2021, the Court struck Showers' improperly filed sur-reply and ordered Defendants to renew their Motions for Judgment on the Pleadings by June 14, 2021. *See* [77]. The Municipal Defendants filed the instant Motion for Judgment on the Pleadings [85] on June 14, 2021, and Sheriff Adam filed his Renewed Motion for Judgment on the Pleadings [88] before the Court on June 15, 2021.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

In deciding a Rule 12(c) motion, the Court accepts all well pleaded facts as true and views them in the light most favorable to the plaintiff. *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018). But "the complaint must allege more than labels and conclusions." *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009). "[A] formulaic recitation of the elements of a cause of action will not do, and factual allegations must be enough to raise a right to relief above the speculative level." *Jebaco*, 587 F.3d at 318. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

4

## III. ANALYSIS

For the reasons set forth below, the undersigned finds merit to the City of Bay St. Louis'

and the Municipal Defendants' Motion for Judgment on the Pleadings [85] and Sheriff Adam's

Renewed Motion for Judgment on the Pleadings based on qualified immunity [88].

### I.      Statute of Limitations

The City of Bay St. Louis and the Municipal Defendants argue that any alleged

unconstitutional acts that occurred before June 14, 2016—the date that Showers' was involuntary

committed to a psychiatric facility—are barred by the statute of limitations because Showers filed

his Complaint [1] on June 14, 2019.  "The United States Supreme Court has held that the forum

state's personal-injury statute of limitations should be applied to all [Section] 1983 claims." *Ricks*

*v. Cty. of Winona*, 858 F. Supp. 2d 682, 690 (N.D. Miss. 2012) (citing *Wallace v. Kato*, 549 U.S.

384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)).  "The statute of limitations for [Section]

1983 claims in Mississippi is three years." *Ricks*, 858 F. Supp. 2d at 690 (citing MISS. CODE ANN.

§ 15-1-49). Showers' claims alleging unconstitutional searches of his home occurring before June

14, 2016, are time barred, and dismissed with prejudice.

### II.     Qualified Immunity for Individual Claims Against Sheriff Adam and the Municipal Defendants, in their Individual Capacities

Sheriff Adam contends he is entitled to qualified immunity on all claims asserted against

him.[3] The Municipal Defendants also urge the Court to dismiss the claims asserted against them

in their individual capacities because Showers' "vague accusations and conclusory allegations"

fail to demonstrate a constitutional violation.

---

[3] It is unclear from Showers' Complaint [1] and *Schultea* Reply [56] whether Sheriff Adam is being sued in his individual capacity as well as his official capacity. Out of an abundance of caution, the Court considers Sheriff Adam's qualified immunity defense raised in his Answer [8] at pg. 2.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. "The question of qualified immunity must be addressed as a threshold issue because this issue determines a defendant's immunity from suit, that is, his or her ability to avoid a trial altogether, rather than merely his or her immunity from damages." *Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994). A law enforcement officer "is entitled to claim the cloak of qualified immunity 'unless it is shown that, at the time of the incident, he violated a clearly established constitutional right.'" *Id.* (quoting *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993)). When an officer raises the defense of qualified immunity, a plaintiff must "allege with sufficient particularity all facts establishing a right to recovery, including facts which negate the official's immunity defense." *Wicks v. Miss. State Emp. Svcs.*, 41 F.3d 991, 995 (5th Cir. 1995).

There are two steps in deciding whether qualified immunity applies. *Pearson*, 555 U.S. at 231. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)) (internal citations omitted). If the plaintiff can establish a violation of a constitutional right, then "the court must decide whether the right at issue was 'clearly

6

established' at the time of defendant's alleged misconduct." *Id.* If both steps are satisfied, qualified immunity does not apply.

"When a defendant pleads the defense of qualified immunity, the trial judge should determine both what the current applicable law is and whether it was clearly established when the action occurred." *Schultea*, 47 F.3d at 1432 (*citing Siegert v. Gilley*, 500 U.S. 226, 231, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991)). The plaintiff "cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not particularly within the knowledge of the defendants." *Schultea*, 47 F.3d at 1432. The plaintiff must provide "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

To defeat qualified immunity, Showers not only has to show that there was a constitutional violation, but that the violation was of a clearly established right. *Pearson*, 555 U.S. at 232, 129 S. Ct. 808. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

The federal claims Showers appears to bring are claims under Section 1983 for violations of the First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment, as well as a Section 1983 municipal liability claim for failure to train against the City of Bay St. Louis and the Municipal Defendants in their official capacities. Judge Starrett warned Showers in his Order [55] requiring Showers to file a *Schultea* reply that Showers "must expound on the particulars of each Defendant's actions with regard to such, as well Plaintiff's own actions."

[55] at pg. 4. Judge Starrett explained that Showers had previously failed "to provide any details in his pleadings regarding his own actions during these various encounters, which would allow the court to determine whether the officer's conduct was objectively unreasonable." [55] at pp. 3-4. The Court examines each alleged constitutional violation claim in turn.

### A.      First and Fourteenth Amendment Claims

The Court finds that Showers mentions only conclusory statements regarding the First and Fourteenth Amendment lacking any specific allegations against any Defendant. In his *Schultea* Reply, Showers simply states "First Amendment, the right to free speech and free press" but neglects to specifically plead violations of the First Amendment against any defendant. [56] at pg. 3. Additionally, Showers provides, "Fourteenth Amendment, the violation of Mr. Showers' right to equal protection under both the Constitution, but also the deprivation of Mr. Showers' right to privileges equal to other citizens." [56] at pg. 4. The Court finds no well pled allegation pertaining to the First and Fourteenth Amendments. Showers' claims for First and Fourteenth Amendment violations are dismissed, without prejudice, for failure to state a claim.

### B.      Fourth Amendment Unconstitutional Search and Seizure

Showers claims that he was illegally seized, and his home illegally searched in violation of his Fourth Amendment rights. In his Complaint, Showers asserts Fourth Amendment individual capacity claims against five of the eighteen named Defendants:[4] Jeffrey Hendrix, Michael DeNardo, Ricky Adam, Push Phillips, and Paul Taylor.[5] [1] at pp. 4-6. Pursuant to Judge Starrett's

---

[4] Showers originally sued additional Defendants other than the ones specifically identified herein, including the former tenants discussed in this Opinion. Seven of these additional Defendants have been dismissed for various procedural reasons.

[5] Pursuant to Order [45] and Order [109], Showers' claims against Hendrix and DeNardo were dismissed for improper service of process. Accordingly, Showers' Fourth Amendment claims are asserted against the remaining named Defendants: Sheriff Adam, Push Phillips and Paul Taylor.

Order [55], Showers was required to file a *Schultea* reply and "provide more details as to who specifically conducted the searches and the actions of each Defendant, as well as Plaintiff's actions, surrounding these searches" because "[t]his type of detail is necessary as to each alleged constitutional violation." [55] at pg. 4. Judge Starrett also mandated Showers to "expound on the particulars of each Defendants' actions with regard to [the illegal seizure claims surrounding Showers' involuntary commitment], as well as Plaintiff's own actions." *Id.*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. However, while warrantless searches "are per se unreasonable under the Fourth Amendment," there are "a few specifically established and well-delineated exceptions" to that general rule. *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 760, 130 S. Ct. 2619, 177 L. Ed. 2d 216 (2010) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)); *see also Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122 (5th Cir. 2014) ("There are, however, circumstances in which a warrantless entry into a home is not a constitutional violation."). Such exceptions include "issues of consent, probable cause and exigent circumstances." [55] at pg. 4 (citing *Gates v. Texas Dep't of Protective & Regul. Svcs.*, 537 F.3d 404, 420 (5th Cir. 2008) (stating that "[w]arrantless searches of a person's home are presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the search")). The Fourth Amendment further requires that an involuntary hospitalization "may be made only upon probable cause." *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992). The standard for qualified immunity in the Fourth Amendment context is objective reasonableness. *See Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1988).

### i. Unconstitutional Search

In his Complaint, Showers claims that his Fourth Amendment rights were violated because "prior to taking Mr. Showers into custody at the psychiatric facility [on June 14, 2016], defendant[] DeNardo and defendant officers, Push [Phillips] and [Paul] Taylor made an illegal search of Mr. Showers' home and premises—having no warrant, and having provided no reason or cause to believe that criminal activity was taking place at the time of the search." *Id.* at pp. 6-7. He asserts that "[a]bout one month before involuntary confinement," "around May 9, 2016 he had to call 911 police emergency for law enforcement assistance when he realized that there were intruders who were trying to gain access to his property." *Id.* at pp. 7-8. Showers claims that "[i]nstead of conducting investigations of the areas where [he] told the defendant officers he heard intruders and saw evidence of intruders, the officers seized the opportunity to conduct 'random, in bedroom searches of [his] home.'" *Id.* at pg. 12. According to Showers, officers searched these "areas where Mr. Showers had not complained about any problems at all, and the defendant officers would force Mr. Showers to stand outside, while they ravaged through his bedroom." *Id.* In his *Schultea* Reply discussing his unconstitutional search claims, Showers merely states that "Defendants conducted searches of Mr. Showers['] home, turning everything upside down when Mr. Showers was not there." [56] at pg. 6.[6]

As discussed previously in this Opinion, the Court has dismissed all of Showers' Fourth Amendment search claims occurring before June 14, 2016, as time barred. *Ricks*, 858 F. Supp. 2d at 690 (citing Miss. Code Ann. § 15-1-49). In support of his claims, however, Showers has not identified any searches occurring after June 16, 2016. Instead, Showers provides that a search

---

[6] It appears that Showers has pled multiple Fourth Amendment unconstitutional search claims, but he has provided facts for only the allegedly unconstitutional search occurring in May 2016.

occurred on or around May 9, 2016, or May 14, 2016. Because Showers only offers dates outside of the statute of limitations in support of his claims, the Court finds that Showers' Fourth Amendment unconstitutional search claims are time barred and are therefore dismissed with prejudice.

Even if his Fourth Amendment unconstitutional search claims were not time barred, however, the Court finds they should still be dismissed. The record reflects that Showers asked officers to search his home for intruders—thereby giving consent for the officers to enter his home. Showers apparently argues, but does not plead anywhere in his Complaint, that his consent did not extend to the areas of his home that he did not complain about, such as his bedroom. The Fifth Circuit has held that it is the searched party's responsibility to limit the scope of the search. *United States v. Garcia*, 604 F.3d 186, 190 (5th Cir. 2010); *United States v. Mendez*, 431 F.3d 420, 427 (5th Cir. 2005) (finding that Mendez gave consent for the officers to enter his home and that "Mendez made no attempt to limit the scope of his consent."). "Where the defendant has failed to limit the scope of the search, the question that remains in determining its validity is whether, under the totality of the circumstances, the search was reasonable." *Id.* (citing *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991)). Here, Showers called officers to his home. The officers' job was to search for intruders. Although Showers does not assert anywhere in his Complaint that he told the officers not to enter his bedroom, now in his *Schultea* Reply, Showers claims that the officers conducted an unconstitutional search of his bedroom. Despite this conclusory allegation, he does not claim that he explicitly limited the scope of the officers' search to only specific areas of his home. Showers does not allege that he instructed the officers not to search certain parts of his home and on the face of his pleadings, he merely alleges that the officers

did exactly what he asked the officers to do—look for intruders. Accordingly, even if Showers'
Fourth Amendment unconstitutional search claims were not time barred, his claims would be
properly dismissed for failure to "state a claim to relief that is plausible on its face." *Twombly*, 550
U.S. at 570.

### ii. Unconstitutional Seizure: Involuntary Commitment

Showers further claims his Fourth Amendment rights were violated when the "defendants
determined Mr. Showers needed to be involuntarily committed to a local psychiatric facility—and
these defendants, specifically defendant Police Chief Michael DeNardo, in conjunction and
conspiracy with department police officers—defendants Jeffrey Hendrix, Push Phillips and Paul
Taylor took egregious measures that led to the involuntary commitment [of] Mr. Showers to a local
facility on June 14, 2016." [1] at pg. 4. According to Showers, "[p]rior to obtaining the order of
commitment, defendant[] DeNardo, defendant, Ricky Adam, Sheriff's Deputies detained Mr.
Showers at his home, placed Mr. Showers under arrest, and then took Mr. Showers into custody
at the psychiatric facility to which Mr. Showers was immediately involuntarily committed." *Id*. pp.
5-6. According to Showers, the "defendants had no credible, reasonable medical evidence upon
which to [forcibly] commit Mr. Showers to any psychiatric facility." *Id*. at pg. 5.

In his *Schultea* Reply, Showers asserts that his Fourth Amendment right to be free from
unconstitutional seizure was violated when he "was forcibly committed to the psychiatric facility
by the municipal defendants without their adhering to clearly established law." [56] at pg. 4. He
claims that "Municipal defendant's affidavit to support Mr. Showers' incarceration, was not only
untimely filed, it was replete with false information—lacking any medical pre-evaluation
evaluation or assessment. It simply accused Mr. Showers of being 'mentally impaired.'" *Id*. at pg.

3. Showers also alleges that Sheriff Adam "seized Mr. Showers from his home, handcuffed him and removed Mr. Showers to the psychiatric facility." *Id*. at pg. 4. He argues that Sheriff Adam "had no probable cause to arrest" and "no reasonable observation to confirm that Mr. Showers was mentally impaired or dangerous." *Id*. According to Showers, Sheriff Adam "failed to assure [sic] that pre-placement medical evaluations had been done which would allow the defendant to seize and incarcerate Mr. Showers had taken place *prior to* this defendant's seizure, detention and placement into the facility per clearly established state law." *Id*. at pp. 4-5.

Pursuant to Judge Starrett's Order [55], Showers was required to provide sufficient facts against *specific* defendants that would negate probable cause for his involuntary commitment. But upon review, Showers' *Schultea* Reply [56] is devoid of any facts to determine whether Jeffrey Hendrix, Push Phillips, or Paul Taylor were even involved in Showers' detention and arrest. In his *Schultea* Reply, Showers provides mere conclusory allegations against the Defendants in general and does not provide sufficient factual allegations against Jeffrey Hendrix, Push Phillips, or Paul Taylor. In fact, in his *Schultea* Reply, Showers only claims that Michael DeNardo and Sheriff Adam were involved in his involuntary commitment. Showers' claims against Michael DeNardo were dismissed for insufficient service of process pursuant to Order [109]. Accordingly, Showers' has only identified one Defendant—Sheriff Adam as being involved in his involuntary detention.

While Showers asserts that Sheriff Adam was involved in his detention and arrest, his *Schultea* Reply contains no more than a conclusory assertion that Sheriff Adam had "no probable cause to arrest" him. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *see also Borden v. Jackson Cnty., Miss.*, No. 1:11-cv-193-HSO, 2012 WL 4339092, at *6 (S.D. Miss. Aug. 24, 2012) (holding that a plaintiff must demonstrate personal participation in alleged unconstitutional

conduct) (citation omitted). Despite arguing that Sheriff Adam lacked probable cause, Showers concedes that an order of commitment was issued and executed. [1] at pg. 5; [56] at pg. 2. The Fifth Circuit has held that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Anokwuru v. City of Houston*, 2021 WL 968830, at *4 (5th Cir. 2021).

Despite review by an independent intermediary, however, the initiating party may be liable if the plaintiff shows that "the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988). Here, Showers alleges that the affidavit of commitment filed by the "Municipal defendants" "was replete with false information—lacking any medical pre-evaluation evaluation or assessment. It simply accused Mr. Showers of being 'mentally impaired.'" [56] at pg. 3. Showers also claims that "false allegations in the forced commitment papers went so far as to classify Mr. Showers as 'suicidal', drug-using' and 'hallucinatory." [1] at pg. 10. According to Showers, however, "[w]ithin 15 minutes of [his] forced placement at CSU, he was drug tested and he tested negatively for all illegal drugs as he is not a drug user or alcohol abuser." *Id.* at pg. 6.

The Fifth Circuit has held that a "conclusory assertion that one defendant 'participated in, approved, and directed' the filing of [a] false and misleading affidavit did not state a claim upon which relief may be granted because it was 'consistent with a constitutional violation, but it needed further factual amplification.'" *Floyd v. City of Kenner*, 351 F. App'x 890, 898 (5th Cir. 2009). As in *Floyd*, Showers' allegations against Sheriff Adam are conclusory and lacking in "factual amplification." Indeed, despite being given multiple opportunities, Showers' claim still fails to

cross the line from conceivable to plausible. The Court finds that Showers fails to support his claims of constitutional violations "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of the defendant's conduct at the time of the alleged acts." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999). Showers' Fourth Amendment Section 1983 claims against Sheriff Adam and the Municipal Defendants, in their individual capacities, are dismissed without prejudice for failure to state a claim.

### C.    Fifth Amendment Due Process

Showers contends that the Municipal Defendants violated the Fifth Amendment's Due Process clause. [56] at pg. 3. However, the Fifth Amendment's *Due Process* clause only applies to the United States or federal actors. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) (emphasis added) (*citing Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)); *see Jones v. Lowndes Cnty., Miss.,* No. 1:09-cv-87-SA, 2010 WL 4643242, at *5 (N.D. Miss. Nov. 9, 2010) *aff'd*, 678 F.3d 344 (5th Cir. 2012) (granting summary judgment on Fifth Amendment due process claims against County, County Sheriff, and other state actors). Accordingly, the Court dismisses, without prejudice, Showers' Section 1983 claim for alleged violations of the Fifth Amendment.

## III.    Municipal Liability under Section 1983

Showers asserts a Section 1983 claim for failure to train against the City of Bay St. Louis and the Municipal Defendants in their official capacities. A municipality is a "person" subject to suit under Section 1983. *See Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Municipalities cannot be held liable under Section 1983 on a theory of respondeat superior, but may be liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The bar on vicarious liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). A local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (quoting *Monell*, 436 U.S. at 690).

To avoid respondeat superior liability, "municipal liability under Section 1983 requires proof of three elements: a policy-maker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted). Municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. *Monell*, 436 U.S. at 690-91. Unlike government officials sued in their individual capacities, municipal entities and local governing bodies may not claim qualified immunity under Section 1983. *Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993).

## A.   Policymaker

"The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) (citing *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 748-49 (5th Cir. 2005) (emphasis added)). A policymaker is "one who takes the place of the governing body in a designated area of city

administration." *Webster v. Cty. of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). He or she must "decide the goals for a particular city function and devise the means of achieving those goals." *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc).

The question is whether any of the Municipal Defendants, Mayor Michael Favre, former Mayor Les Fillingame, Chief of Police Gary Ponthieux, Paul Taylor, Push Phillips, or James Burch, was a final policymaker for the City of Bay St. Louis. Whether a particular official has final policymaking authority is a question of state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (citing *City of St. Louis*, 485 U.S. at 123). Showers has cited no authority under Mississippi law for the proposition that any Municipal Defendant was a final policymaker for the City. Nor has Showers presented any evidence that the City of Bay St. Louis delegated final policymaking authority to any of the Municipal Defendants. *Smith v. City of Wiggins, Miss.*, No. 1:14-cv-26-HSO, 2015 WL 6872230, at *10 (S.D. Miss. Nov. 9, 2015) (finding that the chief of police was not a final policy maker for the city). Even if Mayor Michael Favre, former Mayor Les Fillingame, or Chief of Police Gary Ponthieux was a final policymaker for the City of Bay St. Louis, Showers has not explained how an action of such policymaker constitutes a "custom or policy" of the municipality for purposes of imposing municipal liability.

## B.    Official Policy or Custom

The Court must next consider whether the allegedly unconstitutional action constitutes a "custom or policy" of the municipality. The Fifth Circuit has identified two forms that "official policy" may take. First, a plaintiff may point to a policy statement formally announced by an official policymaker. *See Webster*, 735 F.2d at 841. In the alternative, a plaintiff may demonstrate a "persistent widespread practice of city officials or employees, which, although not authorized by

17

officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.*

Showers' theory of municipal liability is that there is a policy of inadequate training. "A municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (citations omitted). However, when a plaintiff seeks to impose Section 1983 liability on a municipality for its failure to train its employees, normal tort standards are replaced with heightened standards of culpability and causation. *City of Canton, Ohio*, 489 U.S. at 391. To prevail on a "failure to train theory," a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question. *World Wide Street Preachers Fellowship*, 591 F.3d at 756.

Showers' Complaint merely states in a conclusory fashion that "the Mayor and City of Bay St. Louis are liable to [Showers] for the existence and maintenance of a pattern of failure to train and properly supervise its chief of police on carrying out police investigations and 'legal' involuntary commitment." [1] at pg. 27. He also claims that the City of Bay St. Louis failed to "train their officers on conducting investigations in home, gathering and evaluating evidence and remnants of possible crime or identify of perpetrators based on collection and use of forensic evidence." *Id.* Showers further asserts that the City of Bay St. Louis failed to have a "Crisis Intervention" policy in place. *Id.* at pg. 6.[7]

---

[7] While Showers claims that the City of Bay St. Louis and the Municipal Defendants failed to investigate numerous complaints he made concerning intruders at his home, the "[f]ailure to investigate or prosecute an offense does not give rise to § 1983 liability." *Rolen v. City of Brownfield, Tex.*, 182 F. App'x 362, 364 (5th Cir. 2006) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001)); [1] at pp. 8, 12, 19-22, 24.

Showers has failed to set forth evidence that is legally sufficient to support a finding of deliberate indifference. In other words, there is no evidence demonstrating that a policymaker or the City Bay St. Louis has "made a deliberate or conscious choice to endanger constitutional rights." *Lewis v. Pugh*, 289 F. App'x 767, 772-73 (5th Cir. 2008). The deliberate indifference standard ordinarily requires a plaintiff to identify prior incidents that would have notified the City of Bay St. Louis to change the behavior Showers believes caused the alleged constitutional violation. *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998). Without "a pattern of similar incidents in which [other] citizens were injured[,]" there usually can be no deliberate indifference finding. *Estate of Davis ex rel. McCully v. City of N. Richmond Hills*, 406 F.3d 375, 383, 386 (5th Cir. 2005) (quoting *Snyder*, 142 F.3d at 798-99). It is undisputed that no similar incidents have been identified in this case. Dismissal is appropriate as to Showers' municipal liability claim against the City of Bay St. Louis.[8]

### C.     Official Capacity Claims Against the Municipal Defendants

Showers has also sued the Municipal Defendants in their official capacities. An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Showers' allegations against Mayor Michael Favre, former Mayor Les Fillingame, Chief of Police Gary Ponthieux, Paul Taylor, Push Phillips, and James Burch in their official capacities are

---

[8] It is unclear whether Showers asserts a Section 1983 claim for civil conspiracy, but the Court will provide a brief discussion out of an abundance of caution. The Court finds that Showers fails to allege that the Defendants' "allegedly wrongful conduct violated clearly established law" to establish Section 1983 liability, as discussed in this Opinion. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). To the extent that Showers does assert a Section 1983 claim for civil conspiracy, however, the Court finds that Showers fails to plausibly allege a deprivation of a constitutional or statutory right to support civil conspiracy and, thus, has failed to state a civil conspiracy claim that can survive judgment on the pleadings. *Latiolais v. Cravins*, 484 F. App'x 983, 988-89 (5th Cir. 2012) (quoting *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)).

essentially claims against their employer, the City of Bay St. Louis, Mississippi. *See id.* Because the factual basis for Showers' official capacity claims against the Municipal Defendants is the same as that for his claims against the City of Bay St. Louis, Showers' official capacity claims against the Municipal Defendants are duplicative of his claims against the City of Bay St. Louis and should be dismissed for the same reasons. *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (finding dismissal of claims against officers in their official capacities appropriate when the "allegations duplicate claims against the respective governmental entities themselves"); *see Williams v. City of Cleveland, Miss.*, No. 2:10-cv-215-SA, 2012 WL 3614418, at *20 (N.D. Miss. Aug. 21, 2012) (dismissing all official capacity claims against officers as duplicative after granting summary judgment on municipal liability claims against employer City).

## IV.    State Law Claims

In addition to the federal claims asserted, Showers also asserts a host of other state law claims including, civil conspiracy, failure to train, and defamation. [1] at pp. 4, 5, 13, 16, 29. In the Fifth Circuit, "the general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial[.]" *Brookshire Bros. Holding, Inc. v. Dayco Prod. Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). Having dismissed all of Showers' federal causes of action, the Court declines to exercise supplemental jurisdiction over Showers' state law claims. *Heggemeier v. Caldwell County, Tex.*, 826 F.3d 861, 872 (5th Cir. 2016) ("Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if it 'has dismissed all claims over which it has original jurisdiction.'"). Showers' state law claims are therefore dismissed without prejudice.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Sheriff Adam's Renewed Motion for Judgment on the Pleadings [88] is GRANTED and Sheriff Adam, in his individual capacity, is entitled to qualified immunity on Showers' Section 1983 claims.

IT IS FURTHER ORDERED AND ADJUDGED that the Municipal Defendants' Motion for Judgment on the Pleadings [85] is GRANTED and the Municipal Defendants—Mayor Michael Favre, former Mayor Les Fillingame, Chief of Police Gary Ponthieux, Paul Taylor, Push Phillips, and James Burch—are entitled to qualified immunity in their individual capacities. The City of Bay St. Louis is entitled to dismissal of Showers' Section 1983 failure to train claim asserted against it.

IT IS FURTHER ORDERED that Showers' First Amendment claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim.

IT IS FURTHER ORDERED that Showers' Fourteenth Amendment claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim.

IT IS FURTHER ORDERED that Showers' Fourth Amendment unconstitutional search claims are DISMISSED WITH PREJUDICE as time barred. In the alternative, Showers' Fourth Amendment unconstitutional search claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim.

IT IS FURTHER ORDERED that Showers' Fourth Amendment unconstitutional seizure claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim.

IT IS FURTHER ORDERED that Showers' Fifth Amendment Due Process claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim.

IT IS FURTHER ORDERED that Showers' Section 1983 claim for failure to train against the City of Bay St. Louis is DISMISSED WITHOUT PREJUDICE for failure to plead facts to support deliberate indifference. The official capacity claims against the Municipal Defendants are are DISMISSED WITHOUT PREJUDICE as duplicative of Showers' claims against the City of Bay St. Louis.

IT IS FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over Showers' state law claims, and his claims for civil conspiracy, failure to train, and defamation are DISMISSED WITHOUT PREJUDICE.

This CASE is CLOSED.

**THIS, the 31st day of March, 2022.**

                    **TAYLOR B. McNEEL**
                    **UNITED STATES DISTRICT JUDGE**